Filed 5/17/21  In re Nathaniel G. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re NATHANIEL G., a Person Coming Under the Juvenile Court Law. | B307090 |
| | (Los Angeles County Super. Ct. No. 20CCJP01025A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>VICTOR G.,<br><br>        Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, D. Brett Bianco, Judge.  Reversed in part and affirmed in part.

Jacques Alexander Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Kimberly Roura, Senior County Counsel, for Plaintiff and Respondent.

_____

Victor G., the father of eight-year-old Nathaniel G., appeals the juvenile court's jurisdiction findings and disposition order declaring Nathaniel a dependent of the court and removing him from Victor's custody after the court sustained a petition pursuant to Welfare and Institutions Code section 300, subdivisions (a) and (b)(1).[1] Victor contends the court's jurisdiction findings and its disposition order were not supported by substantial evidence. Although we reverse the finding as to Victor under section 300, subdivision (a), as not properly stating a basis for dependency jurisdiction, we affirm the court's finding of jurisdiction under section 300, subdivision (b)(1), and its disposition order.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Nathaniel's Family*

Diana T. is Nathaniel's biological mother. Her whereabouts have remained unknown throughout the dependency proceedings. Mariela R., Victor's girlfriend, was found by the juvenile court to be Nathaniel's presumed mother. When dependency proceedings were initiated, Victor, Mariela and Nathaniel lived in the paternal grandparents' home. The three of them shared a bedroom. Mariela's sister Gabriela also lived in

_____

[1] Statutory references are to this code.

the home and watched Nathaniel when Victor and Mariela were at work.

2. *The Sustained Second Amended Petition and the Juvenile Court's Disposition Order*

On February 4, 2020 the Los Angeles County Department of Children and Family Services (Department) received a referral stating that Nathaniel had bruises on his arm and Mariela was physically abusing Nathaniel on a daily basis, including pinching and biting him.  The report also said Mariela had attacked the paternal grandmother when she tried to protect Nathaniel.

Following an initial investigation, the Department detained Nathaniel on February 18, 2020 pursuant to a protective custody warrant and initiated dependency proceedings.   Ultimately the Department filed a six-count, second amended dependency petition to protect Nathaniel from Victor, Mariela and Diana.

The Department's operative petition, filed July 8, 2020, alleged in identical language as a basis for dependency jurisdiction under section 300, subdivisions (a) (serious physical harm) and (b)(1) (failure to protect), that Mariela had physically abused Nathaniel on one occasion by striking his arm, inflicting a bruise, and on other occasions by pinching and striking his arm and hand and striking his buttocks with her hand and that such abuse was excessive and caused Nathaniel unreasonable pain and suffering.  These two counts further alleged Victor knew of the physical abuse and failed to protect Nathaniel.

In additional counts pursuant to section 300, subdivision (b)(1), the sustained second amended petition alleged Nathaniel was at substantial risk of harm because Victor had a history of substance abuse, including methamphetamine, was a current abuser of marijuana and alcohol, and had used and been

3

under the influence of marijuana while Nathaniel was in his care, all of which rendered him incapable of providing regular care for the child; Victor had a history of engaging in violent and assaultive behavior, including physical assaults against Nathaniel's paternal grandparents; Victor had established a detrimental and endangering home environment for Nathaniel by allowing Mariela to reside in the home and have unlimited access to Nathaniel while knowing she was a current abuser of marijuana and alcohol and, together with Victor, had been under the influence of marijuana while Nathaniel was in Victor's care; and Diana had a history of substance abuse and was a frequent user of methamphetamine, which rendered her incapable of providing regular care for Nathaniel.

The court sustained the second amended petition as pleaded at a jurisdiction hearing on July 29, 2020 at which the court received into evidence the Department's reports and proof from Mariela that she had enrolled in a parenting class and was participating in drug testing and heard argument from counsel. Proceeding to disposition, the court ordered Nathaniel removed from the care and custody of Victor and Mariela, noting in particular "the still-unaddressed anger and substance use" issues. The court ordered family reunification services for Victor and Mariela, including a full drug and alcohol program with weekly testing, a parenting program and individual counseling to address anger management, appropriate child discipline and substance abuse, with monitored visitation at a minimum of three times per week for three hours per visit. Mariela was also ordered to participate in an anger management program. As to Nathaniel, the court ordered an autism assessment and individual counseling, with conjoint counseling with the parents

4

if recommended by his therapist. No reunification services were ordered for Diana, whose whereabouts remained unknown, pursuant to section 361.5, subdivision (b)(1).

3. *The Department's Reports to the Court*

a. *The detention report*

The detailed detention report, admitted into evidence at the jurisdiction hearing, described a visit by the social worker to the paternal grandparents' home on February 4, 2020 following the report of physical abuse by Mariela. The paternal grandmother showed the social worker a photograph of Nathaniel's bruised arm, dated December 20, 2019. Although Nathaniel had initially told his grandmother he did not know how he had been bruised, he later told her Mariela had caused it. During the interview the paternal grandmother, who appeared scared or nervous to the social worker, indicated Victor had hit her in the past. The paternal grandmother also reported that Victor regularly used marijuana. The paternal grandmother subsequently provided videos that showed large containers of marijuana accessible to Nathaniel while Victor and Mariela had left the child at home.

Victor denied any physical abuse of Nathaniel. He explained he and Mariela disciplined Nathaniel in three steps: a verbal warning; a "hand pop"; and, if those steps were unsuccessful, spanking on the butt with a hand. With respect to the bruise, Victor said Nathaniel had told him he hit himself on a rack at a store when with the paternal grandmother. Victor acknowledged his use of marijuana, but initially said he only used it about twice a week and always outside the home. He denied storing marijuana at the house. When asked by the social worker about the strong smell of marijuana in his room, however, Victor admitted he sometimes smoked in the house. Mariela

5

confirmed the three-step discipline system, denied causing any bruises on Nathaniel and said she did not pinch or bite the child. Mariela told the social worker she consumed marijuana edibles, which she kept in her purse.

Nathaniel told the social worker he received "pops" from Victor and Mariela when he was in trouble and said the bruise on his arm was from bumping into something at a store with his grandmother. He denied telling anyone Mariela or Victor hit him or left bruises on him. Interviewed the following day by a sheriff's deputy, however, Nathaniel finally admitted that Mariela pinched him and hit him on his arm and hand, but still denied she caused any bruising. When the deputy told Victor that Nathaniel had disclosed that Mariela was hitting and pinching him, Victor argued with the deputy and said he did not believe her. The paternal grandparents told the deputy they were afraid of Victor and did not feel safe with him in their home.

On February 5, 2020 the social worker contacted Victor's ex-wife, Ariana F., as had been suggested by a paternal uncle. (Ariana remained in contact with the paternal grandmother so Nathaniel could have a relationship with Ariana's son, Nathaniel's half-brother.) Ariana reported that Nathaniel had called her the prior day to say he was being hit by Mariela and had recently left a voicemail for her mother asking for protection from Mariela. The social worker subsequently obtained a copy of that voicemail in which Nathaniel said his grandmother told him the person being called was going to help him because Mariela had been hitting him a lot. Ariana indicated Victor could be violent and said she had seen him punch the paternal grandmother and paternal grandfather on a few occasions during arguments.

6

In a follow-up interview with the paternal grandmother conducted by a Spanish-speaking social worker, the paternal grandmother said she had seen suspicious bruises on Nathaniel's face and arms prior to December 2019; but when she asked about them, Nathaniel would not answer. The paternal grandmother also reported she heard Victor and Mariela yelling at the child a lot, and Nathaniel told her he was afraid of them because they hit him. She said Victor and Mariela smoked marijuana every day and she believed they did so in Nathaniel's presence. The paternal grandmother also described an incident in October 2019 when Victor had aggressively pulled her and threw her across the room and then attacked the paternal grandfather when he attempted to come to her aid.

b. *The jurisdiction/disposition report*

Interviewed again for the jurisdiction/disposition report, Nathaniel repeated that Victor and Mariela hit his hand when he was in trouble, denied either of them pinched him and denied they used any objects when disciplining him. He now explained the bruising on his arm was the result of a fall from a scooter. He said he was not afraid of Victor, or Mariela or Gabriela.

Victor explained that he and Mariela worked from 2:00 p.m. to midnight. He and Mariela smoked marijuana every day when they woke up at noon and again after midnight when they returned home from work. Victor insisted they only smoked outside on the patio and said he stored the marijuana in a jar on a shelf out of Nathaniel's reach. Gabriela took Nathaniel to and from school. Victor denied ever assaulting the paternal grandparents.

The paternal grandfather told the social worker when interviewed in early April 2020 that he had seen fresh pinch

7

marks on Nathaniel's cheeks, fingers and hands. The grandfather asked Nathaniel in front of Victor who had pinched him. Nathaniel said Mariela. Victor rejected the answer. The paternal grandfather reported Victor had pushed him in the past during arguments, but had not hit him.

In her further interview the paternal grandmother said Nathaniel had asked her not to leave him alone with Mariela because she hit him. She also confirmed the assault in October 2019, saying Victor had lifted and dropped her three times. The paternal grandmother reported Victor had used methamphetamine in the past (something Ariana had told the social worker several months earlier) and expressed her belief he was using again, explaining he did "not sleep for days, sometimes three days in a row" and was "easily irritable, violent, aggressive and desperate," symptoms she said she recognized as indicating someone was using methamphetamine.

Victor was enrolled in random drug testing. In the period February through April 2020 he had two positive tests for marijuana and six "no shows." Mariela in February and March 2020 had two positive tests for marijuana and four "no shows."

c. *The last minute information reports*

In a last minute information for the court filed on July 15, 2020, the Department reported that Nathaniel in a June 9, 2020 interview, questioned about the fact his grandmother said he had a lot of bruises, said Mariela "would get mad at me and hit me with her black sandal. She hit me on my hands lots of times. Like more than 10 separate times. She hit me like 5 times every time she got mad. I am scared of her because sometimes she is nice, other times she is mean, especially when my dad is not home." When Nathaniel told his father, Victor called Mariela

8

who denied using a sandal to hit the child.  Victor accused Nathaniel of lying.  Nathaniel continued, "My dad believes [Mariela], but not me.  I'm scared of [Mariela] because I had told my dad she hits me with her black sandal.  I can tell she's mad at me because she always tell [me] not to lie, even though I am not lying."

A last minute information dated July 29, 2020 (the day of the continued jurisdiction/disposition haring) reported that Victor and Mariela continued to live with the paternal grandparents.  Both parents remained inconsistent in their drug testing and had tested positive for marijuana.  The report also detailed an incident in which Mariela, after being told by a testing facility that she could not leave in the middle of her test to speak to Victor, became extremely angry, yelled profanities and threatened staff members.  As a result the facility notified the Department neither Mariela nor Victor could continue to test in that location.

## CONTENTIONS

Victor contends Nathaniel was physically disciplined, not physically abused.[2]  He also asserts marijuana and alcohol were used only when Nathaniel was asleep or away from the house.  Conceding he assaulted the paternal grandmother on one occasion, Victor argues that event did not create a substantial risk of harm to Nathaniel because the child had not been present

---

[2]     Although Mariela has not appealed the court's section 300, subdivision (a), finding that she physically abused Nathaniel, the court's finding that Victor failed to protect Nathaniel from Mariela's physical abuse provides him with standing to challenge the evidence supporting the court's determination Mariela exceeded permissible limits of reasonable physical discipline.

9

during the altercation.  Finally, Victor contends, even if Nathaniel was properly declared a dependent child of the court, reasonable means existed to protect him without removal from Victor's custody.

## DISCUSSION

1. *Governing Law*

The purpose of section 300 "is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm." (§ 300.2; see *In re A.F.* (2016) 3 Cal.App.5th 283, 289; *In re Giovanni F.* (2010) 184 Cal.App.4th 594, 599.)  In addition, the Legislature has declared, "The provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child."  (§ 300.2.)

Section 300, subdivision (a), provides that jurisdiction may be assumed if "[t]he child has suffered, or there is a substantial risk the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian. For purposes of this subdivision, a court may find there is a substantial risk of serious future injury based on the manner in which a less serious injury was inflicted, a history of repeated inflictions of injuries on the child or the child's siblings, or a combination of these and other actions by the parent or guardian that indicate the child is at risk of serious physical harm. . . . '[S]erious physical harm' does not include reasonable and age-appropriate spanking to the buttocks if there is no evidence of serious physical injury."  "Nonaccidental" generally means a

10

parent or guardian "acted intentionally or willfully." (*In re R.T.* (2017) 3 Cal.5th 622, 629.)

Section 300, subdivision (b)(1), allows a child to be adjudged a dependent of the juvenile court when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child . . . ." A jurisdiction finding under section 300, subdivision (b)(1), requires the Department to prove three elements: (1) the parent's or guardian's neglectful conduct or failure or inability to protect the child; (2) causation; and (3) serious physical harm or illness or a substantial risk of serious physical harm or illness. (*In re L.W.* (2019) 32 Cal.App.5th 840, 848; *In re Joaquin C.* (2017) 15 Cal.App.5th 537, 561; see *In re R.T.* (2017) 3 Cal.5th 622, 624 ["section 300(b)(1) authorizes dependency jurisdiction without a finding that a parent is at fault or blameworthy for her failure or inability to supervise or protect her child"].)

Although section 300 requires proof the child is subject to the defined risk of harm at the time of the jurisdiction hearing (*In re D.L.* (2018) 22 Cal.App.5th 1142, 1146), the court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child. (*In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1383; *In re N.M.* (2011) 197 Cal.App.4th 159, 165.) The court may consider past events in deciding whether a child currently needs the court's protection. (*In re J.N.* (2021) 62 Cal.App.5th 767, 774]; *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1215-1216; *In re N.M.*, at p. 165.)

11

A parent's "'[p]ast conduct may be probative of current conditions' if there is reason to believe that the conduct will continue." (*In re S.O.* (2002) 103 Cal.App.4th 453, 461; accord, *In Kadence P.*, at p. 1384.)

Before the court may order a child removed from the physical custody of a parent with whom the child was residing at the time the dependency proceedings were initiated, it must find by clear and convincing evidence that the child would be at substantial risk of physical or emotional harm if returned home and there are no reasonable means by which the child can be protected without removal. (§ 361, subd. (c); *In re T.V.* (2013) 217 Cal.App.4th 126, 135; see *In re Anthony Q.* (2016) 5 Cal.App.5th 336, 347.) "The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child." (*In re T.V.*, at pp. 135-136.)

2. *Standard of Review*

"'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court."'" (*In re I.J.* (2013) 56 Cal.4th 766, 773.) We review the whole record in the light most favorable to the judgment below to

determine whether it discloses substantial evidence such that a reasonable trier of fact could find that the order is appropriate. (*Ibid.*; accord, *In re I.C.* (2018) 4 Cal.5th 869, 892.)

In evaluating the propriety of a disposition order removing a child from a parent or guardian pursuant to section 361, in view of the requirement the juvenile court make the requisite findings based on clear and convincing evidence, we "must determine whether the record, viewed as a whole, contains substantial evidence from which a reasonable trier of fact could have made the finding of high probability demanded by this standard of proof." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1005 (*O.B.*); see *In re V.L.* (2020) 54 Cal.App.5th 147, 155 [*O.B.* is controlling in dependency cases].)

3. *Victor's Failure To Protect Nathaniel from Physical Abuse by Mariela Supports Jurisdiction Under Subdivision (b), but Is Not a Proper Basis for a Finding of Jurisdiction Under Subdivision (a)*

As Victor emphasizes, there was conflicting evidence about the nature of Mariela's discipline of Nathaniel. She and Victor insisted they utilized a relatively benign three-step process that culminated in age-appropriate spanking. However, Nathaniel, while initially denying any form of discipline other than a "pop" on his hand, admitted in an interview with a Department investigator that Mariela repeatedly struck him with her sandal when he misbehaved. Similarly, while giving several different, innocent explanations for the bruise on his arm, Nathaniel told his paternal grandmother that Mariela had caused it by hitting him. And when the grandmother subsequently asked about fresh pinch marks on his face and hands, Nathaniel said that Mariela had done it to him. In addition to speaking to his grandmother about his fear of Mariela, Nathaniel called Ariana and Ariana's

13

mother, seeking protection from Mariela's abuse. He also admitted to the sheriff's deputy investigating the child abuse referral that Mariela pinched and hit him. When told of these incidents, Victor's response was to label his son a liar.

Drawing all inferences in support of the juvenile court's finding, as we must, specifically including its implied credibility determination disbelieving Mariela's version of her gentle method of discipline, there was ample evidence Nathaniel was at a substantial risk of serious physical harm due to Mariela's nonaccidental infliction of physical harm within the meaning of section 300, subdivision (a). (See *In re Mariah T.* (2008) 159 Cal.App.4th 428, 438 [jurisdiction proper where mother punished three-year-old child by striking him with belt on stomach and forearms leaving deep purple bruises]; compare *In re D.M.* (2015) 242 Cal.App.4th 634, 640-642 [section 300 protects against excessive discipline, not reasonable discipline; spanking child on buttocks with hand or sandal did not constitute serious physical harm under section 300] with *In re Benjamin D.* (1991) 227 Cal.App.3d 1464, 1472 [repeated pinching of two-year-old child that left "visible pinch marks" supported dependency jurisdiction under section 300, subdivision (a)].) It may be that none of these incidents, although leaving marks and bruises on Nathaniel's body, caused him serious physical injury. However, as discussed, jurisdiction is justified when one or more less serious injuries evidence a risk of future serious injury—a risk aggravated in this case by evidence of Mariela's inability to manage her anger and her manifestations of aggression.

Contrary to Victor's argument, affirming the juvenile court's finding that Mariela engaged in excessive discipline is not

14

inconsistent with the holding of the court of appeal in *Gonzalez v. Santa Clara County Dept. of Social Services* (2014) 223 Cal.App.4th 72 that a single spanking of a 12-year-old with a wooden spoon that left bruising constituted reasonable physical discipline and did not justify inclusion of the child's mother in the Child Abuse Central Index under the Child Abuse and Neglect Reporting Act. Noting that the mother was concerned her daughter was showing increased interest in criminal street gangs and other forms of discipline had failed, the court held neither use of a wooden spoon to administer a spanking nor infliction of visible bruises necessarily required a finding that the limits of reasonable discipline had been exceeded and that the parent had engaged in criminal child abuse. (*Gonzalez*, at pp. 91-93.) But the court explained, "We believe that visible bruising demarcates, or at least very nearly approaches, the outer limit for the quantum of 'damage' to be tolerated. However, we do not believe that it necessarily compels a finding of abuse unless there are grounds to find that the parent intended to inflict bruises, knew his or her conduct would do so, or should have known that bruises were likely to result from the amount of force applied and the method of its application." (*Id.* at p. 93.)

The paternal grandparents in the case at bar reported seeing bruises and marks on Nathaniel on multiple occasions, and the record clearly supports the inference that Mariela knew striking Nathaniel with her sandals and pinching his face would inflict damage beyond the limits that must be tolerated as appropriate parental discipline.

The evidence of Victor's failure to protect Nathaniel from Mariela's abuse—his repeated willingness to disbelieve reports describing Mariela's inappropriate discipline not only from his

15

son and his mother (the paternal grandmother) but also from the sheriff's deputy who had interviewed Nathaniel, as well as Victor's repetition of the false narrative about the origin of the serious bruising on Nathaniel's arm—plainly supports a jurisdiction finding as to Victor under section 300, subdivision (b)(1).

Contrary to the juvenile court's finding and the Department's argument in its brief on appeal, however, Victor's failure to protect Nathaniel is not a basis for jurisdiction under section 300, subdivision (a), which concerns the nonaccidental infliction of serious physical harm by a parent or guardian, not the failure of a parent to protect his or her child from such harm. Nor is Mariela's intentional infliction of inappropriate discipline a basis for finding jurisdiction as to her under section 300, subdivision (b)(1). The Department's combined allegation in a single count of Mariela's nonaccidental infliction of harm and Victor's failure to protect as a basis for jurisdiction against both parents under subdivision (a), and then again in identical language as a basis for jurisdiction under subdivision (b), was error. The juvenile court's finding that the allegation was true as to Victor under subdivision (a) and as to Mariela under subdivision (b) was also error. And the Department's defense on appeal of the finding under subdivision (a) as to Victor inexplicably ignores the complete disconnect between the statutory language and the evidence regarding Victor's role in this case.[3]

_____

[3] In light of our holding substantial evidence supports the juvenile court's finding Victor is an offending parent under section 300, subdivision (b)(1), based on his failure to protect Nathaniel from Mariela's physical abuse, we need not consider

16

4. *Substantial Evidence Supports the Disposition Order Removing Nathaniel from Victor's Custody*

As of the date of the jurisdiction/disposition hearing, Victor continued to live with Mariela in the paternal grandparents' home. Victor's failure to protect Nathaniel from Mariela's continuing physical abuse, combined with the undisputed evidence he had his own anger issues, had physically assaulted his parents during arguments and he and Mariela smoked marijuana on a daily basis, amply support the juvenile court's determination Nathaniel would be at a substantial risk of harm if returned to Victor's custody in that environment.

While not seriously disputing that conclusion, Victor contends reasonable means existed to protect Nathaniel without removing the child from his custody: The court could have required him to move out of the paternal grandparents' home, ordered Mariela (and, presumably, Mariela's sister) not to live with Victor and Nathaniel, required Victor to participate in a drug treatment program and anger management classes and authorized unannounced visits by the Department to ensure there were no problems.

---

his challenge to the court's other section 300, subdivision (b)(1), findings. (See *In re D.P.* (2015) 237 Cal.App.4th 911, 917; *In re J.C.* (2014) 233 Cal.App.4th 1, 4; *In re Drake M.* (2012) 211 Cal.App.4th 754, 763; see also *In re I.J., supra*, 56 Cal.4th at p. 773 ["'[w]hen a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence"]; *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451 [same].)

17

Victor's suggestion is seriously flawed.  Enrolling in programs, whether for substance abuse or anger issues, is not the same as having made substantial progress toward resolving the underlying problems.  And neither Victor nor Mariela gave the juvenile court any assurance either of them would agree to, let alone comply with, the restrictions Victor's counsel now outlines.  Indeed, despite having talked for months about moving out of the paternal grandparents' home, by the time of the disposition hearing Victor and Mariela were still living there.  In addition, Victor now proposes that Mariela might not live with him only on a "temporary" basis, a troublesome limitation given his failure to recognize the danger she posed to Nathaniel.  Finally, Victor offered no plan for Nathaniel's care if the paternal grandparents, Mariela or Mariela's sister were no longer available during the time Victor was either working or using marijuana—activities that consumed most of his waking hours.  In sum, substantial evidence supports the juvenile court's finding that no reasonable means existed to protect Nathaniel without removing him from Victor's custody.

## DISPOSITION

The juvenile court's finding of jurisdiction as to Victor under section 300, subdivision (a), is reversed.  Its jurisdiction finding under section 300, subdivision (b)(1), and the disposition order removing Nathaniel from Victor's custody are affirmed.


PERLUSS, P. J.

We concur:

SEGAL, J.          FEUER, J.


18